IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

OCT 28 2022

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| ROSA BALDERAS § | |
| Plaintiff, § | |
| vs. § | |
| § | Civil Action No. |
| DENIS MCDONOUGH, SECRETARY OF § | |
| THE UNITED STATES DEPARTMENT § | |
| OF VETERANS AFFAIRS, § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

ROSA BALDERAS, Plaintiff herein, files this her Original Complaint, complaining of DENIS MCDONOGUH, SECRETARY UNITED STATES DEPARMENT OF VETERANS AFFAIRS, Defendant herein, and in support thereof would show the Court as follows:

### I.
### JURISDICTION and VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.) Employment Discrimination on the basis of national origin (Mexican), race (Mexican-American), disparate treatment, and age in violation of Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.) 29 CFR § 1607.1; Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Section 633a, as amended; Disability in violation of the Rehabilitation Act of 1973; and Retaliation on the basis of making a claim and opposing of a practice made to be unlawful employment practice in violation of 42 U.S. Code § 2000e-3 and subjecting Plaintiff to harassment and hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

2. Jurisdiction in this Court is proper under 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. § 1391 (b)(2) and (c)(2) because the Defendant is subject to personal jurisdiction in this judicial district and because this judicial district is where a substantial part of the events or omissions giving rise to the asserted claims occurred.

## II.
## PARTIES

4. Plaintiff is a former employee of the Defendant and began employment with Defendant on May 15, 2011.

5. Defendant is a federal agency and is known as the Veterans Administration under the United States Department of Veterans Affairs and may be served by delivering the Summons and copy of Plaintiff's Original Complaint to Dennis McDonough, Secretary of the United States Department of Veterans Affairs at 810 Vermont Avenue, NW, Washington DC., 20420.

### III. CONDITIONS PRECEDENT TO SUIT

6. On April 8, 2019, Plaintiff filed an internal EEO complaint claiming discrimination based on disability, retaliation, and subjection to hostile work environment.

7. On or about December 17, 2018, Plaintiff filed for a request for a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ).

8. On February 8, 2021, the EEOC AJ granted Defendant's Motion for Summary Judgment. In March, 2021, Plaintiff timely Appealed the EEOC AJ's decision to the EEOC Office of Federal Operation (OFO).

9. On August 3, 2022, the EEOC OFO issued its determination dismissing Plaintiff's Appeal and informed Plaintiff of her rights to file suit in court. Plaintiff timely files this her complaint.

10. All conditions precedent have been performed or have occurred.

## IV.
## STATEMENT OF CLAIMS

10. Plaintiff is a Mexican American female and was sixty-five (65) years old at the time that the incidents of discrimination occurred.

11. Plaintiff suffered from the following disabilities: interstitial cystitis, attention deficit disorder (ADD), and depression.

12. At the time Plaintiff was subjected to discrimination, she was receiving IC-DSMO Treatments and taking Vesicare 5mg for bladder flare ups, Uribel for bladder spasms, Serterline 100mg for depression, alprazolam .5mg for anxiety, and Concerta for ADD.

13. Defendant was aware of Plaintiff's medical conditions and associated disabilities.

14. Plaintiff had a medical restriction of one (1) to two (2) days bed rest when experiencing bladder flare ups associated with her medical condition of interstitial cystitis.

15. At the time that the discrimination occurred, Plaintiff was receiving counseling for her anxiety and depression. Plaintiff's medical conditions were exacerbated as a result of the Defendant's harassment and subjection to hostile work environment.

16. Plaintiff was the oldest employee in her department, the Veterans Outpatient Clinic in Corpus Christi, Texas as a Social Worker Case Manager for the Homeless Veterans.

17. At the time that the discrimination occurred, Plaintiff was assigned to the Veterans Outpatient Clinic in Corpus Christi, Texas as a Social Worker Case Manager for the Homeless Veterans at a pay grade level of a GS-12. Plaintiff's work responsibilities were as follows:

a. Defendant had a contract with Salvation Army and Charlie's place to house 10 Veterans for up to 4 to 6 months. Plaintiff worked with both these programs and her primary responsibility was provide housing, care management, and outreach to Homeless Veterans.

b. To conduct outreach for community agencies and government entities which included: City of Corpus Christi, Corpus Christi ISD, Nueces County Agencies, Texas Department of Aging and Disabilities to ensure Plaintiff was informed and aware of all services available to Homeless Veterans.

c. Case Management: HCHV (Health Care for Homeless Veterans) referrals were made by Veteran's Administration Medical staff, Homeless shelters, assessments of shelters or veterans living in the streets. Provide initial assessment for new referrals; assist Veterans in obtaining TB Shot to rule out tuberculosis; and when Veteran was cleared, begin the admission process which included completing the following: Psychological Assessment, Suicide Assessment, Admissions orientation, Enter admission into the Homeless Veterans National Tracker, make medical appointment as needed, Place referrals for Dental/Health, employment assistance, mental health, Assistance with DD214 and social security application process, Referral to Housing HUD VASH and any other needs Veterans might have.

d. Clinical Counseling: Meet individually with the Veteran once a week if possible. Utilize an eclectic form of social work and psychology therapies to assess Veteran's Mental Health status and provide supportive counseling with whatever issues Veterans might have such as depression, anxiety, feelings of hopelessness, shame, etc. If Veteran was identified as having suicidal ideations, Plaintiff used VA suicidal Protocol, preformed a suicide assessment and provide referral to ER or other Mental Health Facility in the community. Remained with the Veteran, although other staff would be available, until Veteran was admitted to ER or Mental Health Facility. Provide group therapy once a week on Wednesdays from 5:30 to 7:00pm.

e. Other Duties: Attend monthly staff meetings. Attend all mental health VA Regional Meetings. Perform Peer Review of other staff's client's file monthly and participate in stand down event. Attend monthly City of Corpus Christi Homeless Meeting. Attend monthly mayor's committee on Aging and Disabilities. Attend Veteran's Mayor's committee which consisted of all Veteran's Organizations. Assisted in establishing an AA Meeting at the Salvation Army. Coordinate the pickup and distribution of bus passes to VA staff so they could provide such passes to veterans who needed transportation. Coordinated collection of clothing and housing furniture and other items donated by community members and organizations.

f. Documentation: Enter case management and social work notes into VA data software. Enter admission and discharges into Homes Data Base. Keep updates on Excel Tracker.

Enter and Initial, midterm and closing Treatment plans into Treatment Plan Data Base. Document suicide Assessment in clinical Social Work Data Base. Document all contacts made by Veteran and by other VA Medical Staff concerning Veteran, and Document all phone contact with Veterans and other individuals calling in regard to Veteran.

18. Plaintiff's immediate Supervisor was Carrie Meyers, VCB Homeless Program Coordinator Manager for the Texas Valley Coastal Bend Corpus Christi Outpatient Clinic. Ms. Meyers is an Anglo female and was younger than Plaintiff. Ms. Meyers had knowledge of Plaintiff and Plaintiff's medical conditions prior to becoming Plaintiff's Supervisor in October 2016.

19. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans and was treated more favorably than Plaintiff.

20. Meyers subjected Plaintiff to harassment and hostile work environment on several occasions when questioning Plaintiff whether she had been assessed for early onset of dementia. Meyers questioned Plaintiff how she could know she did not have dementia if she was never tested. Chris King however, was not questioned about his mental ability to recall information.

21. Meyers subjected Plaintiff to harassment and hostile work environment when she assigned Nicole Theriot, Social Worker Supervisor, to provide Plaintiff training and then had Plaintiff tested to measure the information Plaintiff had retained for the purpose of determining Plaintiff's mental recall of information. Chris King was not subjected to this type of testing, nor was he questioned about his mental ability to recall information.

22. From March, 2018 thru December 13, 2018, Meyers subjected Plaintiff to a hostile work environment and disparate treatment. During this time period, Meyers audited Plaintiff's work charts on a frequent and almost daily basis and was treated less favorably than similarly

situated employees. Chris King was not subjected to such frequent and daily auditing of his work charts as Plaintiff.

23. From March 2018 through December 13, 2018, Meyers subjected Plaintiff to a hostile work environment, causing Plaintiff to miss more work frequently due to stress, anxiety, depression, exacerbated IC flare ups, and eventual constructive termination. Chris King was not subjected to this type of harassment nor hostile work environment causing him to miss time from work.

24. Although, Meyers had knowledge other staff employees making mistakes frequently, their charts were not reviewed frequently as those of the Plaintiff.

25. Meyers subjected Plaintiff to harassment and hostile work environment by accusing Plaintiff that for the past years, Plaintiff had documented the CPRS forms wrong. Plaintiff had been trained in documenting CPRS forms by HCHV Social Worker Case Manager, Amanda Domeland. Prior to Meyers becoming Plaintiff's supervisor, Plaintiff has not been questioned of documenting CPRS forms the wrong way. Chris King, Anglo male, was a similar and situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans and was treated more favorably than Plaintiff and not questioned about documenting CPRS forms the wrong way.

26. Meyers subjected Plaintiff to race and national origin discrimination by making disparaging comments about Mexican Americans. Meyers expressed to Plaintiff that she [Meyers] could not understand the documentation by case managers from Harlingen and McAllen, Texas. All case managers from Harlingen and McAllen, Texas, and Plaintiff, were Mexican American.

Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans and was not subjected to disparaging racial comments as Plaintiff.

27. Meyers harassment from March, 2018 through December 13, 2018, was daily. Meyers sent Plaintiff excessive emails and Skype messages meant to document Plaintiff's work and negative in nature and requested corrections that at time were unreasonable. Meyers' excessive emails and Skype messages disrupted Plaintiff's work and her ability to perform her job responsibilities. Meyers had knowledge of Plaintiff's ADHD disorder, and as a License Professional Counselor would know that her constant micromanagement would exacerbate Plaintiff's anxiety, depression and sense of loss related to ADHD. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans and was not subjected to receiving excessive emails and Skype messages from Meyers.

28. On May 14, 2018, Defendant engaged in harassment and subjected Plaintiff to a hostile work environment when Ms. Meyers accused Plaintiff of fraud and directed Plaintiff to make corrections and additions to her 2017 case load. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans and was never accused of fraud, which is a criminal allegation.

29. Meyers wanted HCHV documentation to be done as the HUDVASH; however, the HUDVASH documentation had a different scope and criteria.

7

30. Meyers engaged in harassment, subjection to hostile work environment, and disability discrimination when Plaintiff's ADD condition was used against Plaintiff when Meyers questioned the Plaintiff whether she [Plaintiff] had problems with the CPR course because of her [Plaintiff's] mental capabilities. Plaintiff passed her CPR course. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans was not questioned about his mental capabilities and/ or limitations.

31. From July 9, 2018, through September 5, 2018, Meyers continued to harass the Plaintiff and created a hostile work environment. Meyers placed the Plaintiff on a sixty (60) day trial period to evaluate Plaintiff's competency. Plaintiff was not to obtain any assistance from any fellow employee. At the end of the sixty (60) day's period, Meyers was to meet with Plaintiff to provide feedback on how Plaintiff had performed. No meeting took place, and no feedback was provided to Plaintiff. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans was not placed on a sixty (60) day period to evaluate his competency.

32. On October 30, 2018, Ms. Theriot via email informed Plaintiff that she [Theriot] had not completed the audit of the charts, but would rate Plaintiff's social work competencies as proficient.

31. Meyers engaged in harassment and subjected Plaintiff to a hostile work environment when Ms. Meyers denied Plaintiff's request to use EAP services in the community. Plaintiff did not want to use the VA's EAP program because the individuals working with the VA's EAP

program were colleagues or friends. Plaintiff was still grieving her brother's death that occurred in October 2017 and was recovering from left carotid surgery.

32. Defendant engaged in race and national origin discrimination when Ms. Meyers conveyed to Plaintiff that she [Meyers] did not like to express her feelings and being dramatic like "Hispanic folk". Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans was not subjected to disparaging racial remarks about his race.

33. Plaintiff made protected disclosures by sharing with employee friends the treatment she was being subjected to by Ms. Meyers.

34. On October 25, 2008, Plaintiff sent a letter to Dr. Jennifer Wood, Czech American, Associate Chief of Staff for Mental Health and Homeless Program Manager, and copied Meyers and Ms. Theriot, wherein the Plaintiff informed Dr. Wood about the stress she was under at work and requested assistance and advice regarding the adverse treatment towards Plaintiff. From October 28, 2018 through December 14, 2018, Defendant subjected Plaintiff to harassment, hostile work environment and retaliation by limiting face to face verbal communications; increasing her emails and Skype messages to Plaintiff; decreased Plaintiff's community participation and homeless related activities; engaged in attempts to falsely charge Plaintiff with AWOL; would contact outreach facilities to verify Plaintiff's presence at the facility; and directed the HCHV Senior Social Worker to review Plaintiff's current case load weekly and submit a report of errors with corrections. Chris King, Anglo male, was a similar and situated employee who worked in

the same position as a Social Worker Case Manager for the Homeless Veterans was not subjected to this type of treatment, accusations of being AWOL, nor retaliation.

35. Defendant subjected Plaintiff to an adverse employment action when in 2017 Ms. Meyers charged Plaintiff with AWOL for one (1) day.

36. Defendant engaged in race, national origin, and disparate treatment against Plaintiff when Chris King, Anglo male, a similarly situated employee was being allowed to attend meetings during his walk-in coverage days. While Plaintiff was required to be in the HCHV office all day on her walk-in day coverage. Mr. King was frequently not in his office when assigned POC walk-in homeless Veterans. Plaintiff had received over one hundred Skype messages from staff requesting Plaintiff's assistance because Mr. King was not available. Mr. King had the same duties and job responsibilities as Plaintiff and was treated more favorably than Plaintiff as stated above.

37. Defendant subjected Plaintiff to an adverse employment action when on December 6, 2018, Ms. Meyers issued Plaintiff a letter of proposed termination. Plaintiff was advised by her union representative that if she challenged the proposed termination, it could adversely affect her and that she would lose her retirement benefits; and that Defendant could report her to the Social Work Examining Board and lose her license. Chris King, Anglo male, was a similarly situated employee who worked in the same position as a Social Worker Case Manager for the Homeless Veterans was not subjected to any form of discipline nor presented with a proposal for termination.

38. Defendant engaged in race, national origin, age, disability, disparate treatment discrimination, and subjected Plaintiff with an adverse employment action when on December 14, 2018, Ms. Meyers forced Plaintiff to constructively retire from her employment with Defendant.

39. Meyers engaged in post-employment retaliation and harassment by knowingly and intentionally falsely accusing Plaintiff of theft of documents belonging to Defendant. Meyers reported Plaintiff to Defendant's Office of Inspector General. OIG Special Agent Jeff Burke and a Corpus Christi, Texas police officer went to Plaintiff's home, conducted a search, and found no evidence of stolen documents.

## V.
## CAUSES OF ACTION

40. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs 10 through 39, inclusive, above by reference as if fully set forth at length herein.

A. Title VII employment discrimination:

41. The conduct of Defendant constitutes a violation of the Equal Employment Opportunity Acts prohibitions of discrimination based upon Race (Mexican); and National Origin (Mexican American).

42. This violation caused Plaintiff to suffer damages.

B. Retaliation and Hostile Work Environment:

43. Defendant engaged in retaliation and conduct creating a hostile work environment to Plaintiff, causing her economic and other damages.

C. Harassment:

44. Defendant has engaged in harassment against Plaintiff, causing her economic and other damages.

D. Disability Discrimination:

11

45. Defendant has engaged in age discrimination against Plaintiff, causing her economic and other damages.

E. Disparate Treatment Discrimination:

46. Defendant has engaged in disparate treatment discrimination against Plaintiff causing her economic and other damages.

## VI.
## DAMAGES

47. Defendant's acts and omissions have caused Plaintiff to suffer damages including past and future lost earnings (including back pay and front pay), past and future injury to reputation, and past and future mental anguish.

48. Plaintiff seeks recovery of these damages from Defendant.

## VII.
## ATTORNEY FEES

49. Defendant's acts and omissions have caused Plaintiff to incur attorney fees and court costs. Plaintiff is entitled to an award of attorney's fees and court costs under Title VII, 42 U.S.C. § 2000e-5(k). Plaintiff seeks recovery from Defendant all attorney's fees and court costs through judgment in this court with additional contingent amounts in the event of post-judgment and appellate proceedings.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer herein to Plaintiff's Original Complaint, and that upon final trial, this court enter a judgment awarding the Plaintiff all of the aforementioned damages,

attorney's fees, costs of court, and prejudgment and post-judgment interest. Plaintiff also asks for such other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

Plaintiff requests a jury trial.

Respectfully submitted,

LAW OFFICES OF ARTHUR G. VEGA
P.O. Box 461106
San Antonio, Texas 78246-1106
Telephone Number:   (210) 379-3111
E-mail: artavega@yahoo.com

_____
ARTHUR G. VEGA
State Bar No. 20533600

ATTORNEY FOR PLAINTIFF

13